## In the Matter of the Estate of WILLIAM Fox, Deceased.

Surrogate's Court, Kings County, June 23, 1942.

*John F. Furey* and *A. M. & H. S. Cohen,* for Helen Kenny and Hugh Fox, as administrators, etc.

*Harold M. Kennedy, United States Attorney* for the Eastern District of New York (*Frank J. Parker, Assistant United States Attorney,* of counsel], for the United States Civil Service Commission, claimant.

*Quasha, O'Hagen & Meagher,* for the distributees.

*Louis A. Brown,* for the assignee.

McGAREY, S. In this proceeding, the United States Civil Service Commission seeks to recover the sum of $2,244.49, representing the difference between the amount of retirement annuity paid to the decedent, and the amount it claims he should have received. The alleged overpayment results from a conflict in the date of decedent's birth as stated by him in his application for

retirement and in the claim filed by his administrators for the balance of his annuity after his death.

In 1934, the decedent made an application for his retirement from the service of the United States as an engineman-helper. He then gave his date of birth, November 16, 1869, and he was retired as of November 16, 1934. Thereafter, and until his death, he received his annuity totalling $5,623.80.

The decedent died on May 10, 1940. Shortly thereafter his administrators filed a claim for the balance of the annuity which became due upon his death. The claim contained a statement that the decedent was born on January 6, 1862, and the same date appeared upon a death certificate which was filed with said claim, and on request for further proof the administrators forwarded a baptismal certificate showing that one William Fox was baptised in Ireland on October 17, 1862. The civil service commission, consequently, recomputed the annuity using as a basis the decedent's retirement age of sixty-five in January, 1927, instead of November, 1934, and accordingly made a claim against the estate for the difference which it claims to have overpaid the decedent.

There has been no decision covering the precise issue submitted to the court by counsel, nor has the independent research of the court disclosed any, but reference is made to two opinions of the United States Comptroller General reported in 5 Comp. Gen. 70 and 6 Comp. Gen. 263. Such opinions are only advisory and not controlling, and they are not pertinent to the issue here involved.

The opinion in 5 Comp. Gen. 70, holds, in effect, that the service of an employee beyond the retirement age must be regarded as *de facto* status; that, as such, he may retain the compensation already received by him; that the deductions made for the retirement fund from his salary while a *de facto* employee may not be refunded. The opinion in 6 Comp. Gen. 263 involved the right of a *de facto* employee to recover moneys deducted from his compensation for retirement purposes. The statement contained therein, that *de facto* service gives no right in computing length of service for determining the amount of annuity, is *dictum*.

Neither opinion of the comptroller general holds that the statute authorizes the recovery of a claim such as is made here. Nor can such a contention be made, because there is no provision in the statute, either express or implied, that could be made to apply to the facts here presented.

Section 715 of title 5 of the U. S. Code, upon which the claim is based, provides, in effect, that an employee, on arriving at the retirement age (65) and having rendered fifteen years of service, shall be automatically separated from the service, and his salary

shall cease from that date. Section 715-a provides that after July 1, 1932 no person shall be retained in service after reaching the retirement age, except on presidential order. No such order was issued to or for decedent. Section 707 states that the aggregate period of service for calculating retirement annuities shall be computed from the date of original employment. It does not state expressly or impliedly that it shall end when the date of automatic separation is reached; nor does the act expressly or impliedly state that the *de facto* services actually rendered and paid for by the government shall be excluded in computing retirement annuities. Had Congress so intended it could and should have so stated.

The claimant cannot recover upon the theory of unjust enrichment or improper payment, because it has suffered no damage, nor was the decedent unjustly enriched by the alleged error of decedent's date of birth.

The claimant must use one date for both purposes. It cannot use January 6, 1862 for fixing the rate of annuity and use November 16, 1869, to fix the date from which the annuity, properly payable to decedent, should have been computed.

Had decedent retired when he reached the age of sixty-five computed by the use of January 6, 1862 birth date, the government would have paid to the decedent not less than $7,298.71. The government actually paid to him $5,623.80. True he was employed and paid a salary from January 6, 1927 to November 16, 1934, but he rendered services therefor and the government would have had to employ some one else to do the work and pay him for it.

It is apparent, therefore, that there has been no improper overpayment made, no unjust enrichment and no moneys improperly had and received. Consequently there is no obligation on the estate to repay.

Cases may arise where the amount paid to the retired employee from the date of actual retirement would exceed the amount payable had he been separated from the service prior thereto at the date he actually reached retirement age, in which event the United States Civil Service Commission might be entitled to recover the excess. But this case is not one of them.

The claim is dismissed and the objections overruled.